Please call the next case. 5-14-0-2-1-9, National Freight Industries v. Workers' Compensation Comm'n. May it please the Court, Robert E. Makarowski on behalf of National Freight Council. It's the position of National Freight that the Industrial Commission decision affirmed by the Circuit Court finding the causal connection between the May 25, 2011 occurrence and his need for subsequent surgery is against the manifest way that the evidence and in fact the law. We have been before you, the same parties, National Freight and Mr. Spitt before, on an injury that he sustained in 2008. Prior to that 2008 injury, he had an injury at Fisher Lumber in 2006. We raised the issue, if you remember or read the prior decision. In 2006, he worked for a different respondent, was diagnosed with a herniated disc, and was scheduled to have surgery one day after the first National Freight accident on December 4. We appeared before you and argued that Vogel applied in that case. You disagreed with our position that Vogel applied in the case because the nature of the surgery was changed from a microdiscectomy to a fusion. In between that time, actually your decision was the initial National Freight injury was December 5. By the time we got to the appellate court the first time, your decision was in June of 2013. Prior to us getting there, Mr. Smith had this occurrence on May 25, 2011. And in this occurrence, he was driving his truck. A tornado struck and caused his truck to turn over. In 2010, Dr. Kennedy, who is the treating doctor in this case, did perform a two-level fusion in L3-L4, L4-L5. In December of 2010, he was under the care of pain specialist Dr. Narla. And on December 8, 2010, he was complaining of lumbar back pain, radiating to the anterior aspect with tingling and numbness, right worse than left leg. In February 11, 2011, some three months prior to this occurrence, he returned to Dr. Narla. He was under the care of Dr. Narla taking pain medication to include a hydrocodone and other medications. Because of his complaints of ongoing pain, Dr. Narla scheduled an MRI on April 14, 2014. And that showed evidence of spinal stenosis, scoliosis, and degenerative problems. Six days prior to our injury on May 25, 2011, Mr. Smith returned to Dr. Kennedy, the surgeon, the initial surgeon who did the fusion at L3-L4-L5. And he was complaining of progressively severe pain in the lumbar area and right leg over the last two months, worse with walking. Dr. Kennedy, in his report of May 19, 2011, reviewed the MRI and said that he had significant spinal stenosis, L2-L3, in the area above where the previous surgery was. His impression was spinal stenosis with increased severe pain. He attributed the stenosis to his prior fusion. May 25, he has this occurrence. An ambulance arrives at the scene. He refuses medical care. He stays the night, I think, at a local hotel. Another truck driver from NFI drives him back to his location. And he works full duty, unrestricted, until June 15, 2011, some 20-some days before his counsel sets him up with Dr. Kennedy again. Dr. Kennedy does see him on June 15, and Dr. Kennedy says that his symptoms are more severe. We took Dr. Kennedy's deposition, and Dr. Kennedy testified that none of the findings neurologically were different. They were the same exam findings on May 19, six days prior to this occurrence, and on June 15, he used the word significant stenosis. Let's cut to the chase. There's no question he had preexisting problems in that area. I think I've disputed that. As I understand it, if I'm correct, I believe you're saying that the May 20 accident broke the chain of causation with regard to his earlier accident, correct? No, we're saying the exact opposite. We're saying that it did not break the chain. When you talk about Kennedy, would you agree that the claimant need only show that it was a causative factor? It doesn't have to be the sole or the primary. Didn't Kennedy, however, testify that the claimant was much worse after the May 20, 2011 accident? He testified that he thought his symptoms were worse, but that your position that he only needs to show that it was a causative factor in terms of when you have a prior condition of Bill Bean is incorrect. When you look at the law, and we cite it in our case, the Illinois law is clear, and we cited Devaney and we cited Vogel, that the chain of custody stemming from a prior work-related accident is not broken by a subsequent accident. Which aggravates a condition, okay, already weakened by. And Global said, for an employer to be relieved of liability by virtue of an intervening cause, the intervening cause must completely break the causal connection chain between the original injury and the ensuing condition. NFI is not saying that this person shouldn't be entitled to the surgery he's seeking. What NFI is saying is we should be responsible for the surgery under your prior appellate court decision. In other words, NFI would still be responsible? No, NFI would still be responsible, but it should go back to the December 2008 injury, because clearly in this case, he was still treating, and prior to this case, he was diagnosed with the severe spinal stenosis, having progressive pain that was caused by a spinal cord injury. The spinal cord injury was controlled by narcotic medication and required, because of the degree of his pain, the MRI. And Dr. Kennedy's position doesn't change in terms of stenosis, and the surgery that he is recommending is for the spinal stenosis. I don't remember, did the previous case come up on a 19B? The previous case was a 19B, that's why we, you know, and the process took a while, and by the time we got done with this court and the process, he had this intervening accident, and we actually heard on arbitration on review before we even came to you. So my point, I'm just trying to figure out exactly what you're gaining here by assuming liability in the previous one instead of this one. Because that's where, well, in terms of this surgery, it belongs. You're talking about the indemnifier, aren't we? No, well, I mean, NFI is, NFI, you know, was responsible for December 2008. No, no, no, that's the principle, the bottom indemnification. Right. Okay, so do we have a difference in the, to be kind of an indemnifier in the most recent prior one? You know, I think it belongs under, clearly belongs under the first case. That's correct. We're not saying we're not going to pick up the surgery, but we're going to pick up, we want, we think that the proper way to pick up the surgery is under the first case because this intervening accident didn't completely break the chain. There has to be something more involved here than just making a philosophical point or something. I'm just, you know, trying to get down to the practicalities. We have deductibles, we have, you know, we're self-insured to a certain level, and after our self-insured level, then we have excess coverage. Okay? So if, yeah, if you want to say what's the financial argument that I'm making here for my client, it's, it should be covered under the one that we're currently paying on and have paid on. And under the law. Right. Under the law, the chain wasn't broken because, and the law says you could have an intervening accident, but if you're on the hook for a work-related injury, and that intervening accident doesn't completely break the chain, then you're still responsible on the first. And that's our argument. And when you look at the case law, I think it's clear. And if you apply Vogel, and you used in the initial decision the but-for argument, and in this case, Dr. Kennedy made it clear on May 19th that his problem is spinal stenosis. And but-for the original injury that occurred in December of 2008, he wouldn't have had the surgery, which Dr. Kennedy says caused the spinal stenosis, and is the basis for the current surgery name. So, but-for the fact that he had the December 8th, he wouldn't have had the surgery, and but-for the fact that he had the surgery, he wouldn't have had the spinal stenosis. And this incident was in part an aggravating factor. Now, Dr. Kennedy put into this case, well, he had a disc herniation, too. He needs surgery now, is that correct? Correct. Has he had that surgery? No. And he was going to have the surgery. Can I ask a question? Sure. And so has that surgery been refused? No. I'm just wondering, because you're saying you're going to pay for it either way. We're going to pay for it either way, and in fact, the surgery was going to be scheduled and done, but he had a heart condition, which precluded him from initially having that surgery. Now his heart condition, and that's not part of the record, but she asked the question. Okay. His heart condition is cleared, and he's now able to have the surgery for the spinal stenosis. And we're not going to stand in the way of him having the surgery, but we think under the case law that it clearly belongs under the December of 2008, because this injury didn't break the causal connection, and when you apply vulvo, the but-for, but for the fact that he had the original injury with us, he wouldn't have had the first surgery, and the first surgery is what caused the spinal stenosis, and the surgery now is for the spinal stenosis. Now, Dr. Kennedy did try to put a little distinguishing thing in this, said, well, he has a herniated disc, too, but we took his deposition, and in counsel's brief, page 5, she says for it, and I think correctly so, and this is why I don't think there's a distinction, he testified that the stenosis was, in part, produced by the disc herniation. In part. In part, okay. But it wasn't solely caused by, so again, he didn't break the causal connection, even if it aggravated or in part, and if you remember vulvo, you had a person who had a fusion, had three car accidents, the fusion was almost solid, because of the car accidents, he had to go in to get other surgery. They went back to the initial condition and said, hey, the car accidents didn't aggravate the condition. And the court went on to say, I think in some other cases, and initially in vulvo, it doesn't matter if it's a work-related or non-work-related incident that aggravates the condition. If the causal connection wasn't completely broken, and there's no other case law that's to the contrary, and it's in support of what you did before. I don't know if all of you said, I know Judge Hoffman said on the vulvo case, it should properly go there. And I think Counsel's Brief, when you look at page six and seven, I'm sorry, when you look at page 12 of Counsel's Brief, I think she correctly sets forth what the case law is to. Let me ask you this. Did Dr. Kennedy indicate he detected a change in the pathology on the Klayman's diagnostic films, including a disc herniation not seen on Klayman's April 2011? That's what Dr. Kennedy testified to. But when you look at his deposition, and I just read it to you on page five of Counsel's Brief, he said, in part, the spinal stenosis is because of the disc herniation. But the spinal stenosis was present and progressing prior to the incident. Clearly, in his May 19th report, in part, doesn't break the causal connection chain. So it goes back to the very first one. We're not saying we're not going to pay for the surgery, but it should be under that case. If we're going to apply a vocal as good law, and all the other cases that I've cited, and Counsel's cited the same cases, she cited global on page 12. And it says, in its analysis, the court determined for an employer to be relieved of liability by virtue of an intervening cause, the intervening cause must completely break the causal connection chain between the original work-related injury and the ensuing condition. And in global, and she talks about global here, it's a but-for analysis. And but for the fact that he had an injury at NFI in December of 08, he wouldn't have had the initial fusion. He wouldn't have developed, as a result of that initial fusion, the stenosis that continued to accelerate in advance to the point where Dr. Kennedy, six days prior to the injury, said that he has significant stenosis. And he hasn't changed the fact that it's significant after the injury. It's significant before, it's significant now. And yeah, maybe the herniated disc played a part in it, but it wasn't the sole cause. And under the case law, it has to be the sole cause to break the causal connection. We should be responsible for the surgery under the original action. We're not saying we're going to walk away from this, but it really belongs on the first one. Do you guys, gentlemen, have any questions? Time is up. I don't believe we do. Thank you. Thank you. Leslie Collins on behalf of the employee, Mr. Smith. And just a side note. They haven't authorized the surgery, but you can go ahead and have it done as long as it's on Dr. Kennedy's dime until we get this decision. So, I mean, that's kind of where we're at on that. But anyway, as far as what I just want to point out, looking at, I think most significantly, we have a study that was done 41 days prior to this accident. And I think significantly looking at that, and it's cited in our brief, Dr. Narla specifically in that he notes L2, L3 disc levels were grossly unremarkable. And then we flip to the study, the CT myelogram that was done in August of 2011, and that's where Dr. Kennedy notes the herniation at this level. He said that was not present in the April 2011 study. In my mind, that's a change in pathology. Well, that's what I wanted to point out to him. Now, opposing counsel cites Vogel as controlling the situation that supports his position. What's your take on his argument that Vogel supports his position? Well, I don't think Vogel supports his position at all. Because like I said, we've got, you know, I think we've got a change in our pathology and the client's or the employee's symptoms when he presents. So are you saying that was new? That was a new trauma? I believe so. I believe so. That was new. And also, significantly, if we look at Dr. Narla's notes in the April 2011 note, he only notes pain down one of the legs. And I believe if I look at it, pain down the right leg. When he returns to see Kennedy in June of 2011, he has the lumbar pain, but pain down both legs. So I think this is where we come into play. Okay, we have this L2, L3 herniation, and that's causing the pain down both legs. So you're saying the herniation is a result of the overturning, right? I'm sorry? You're saying the herniation is a consequence of the truck overturning. I believe so. I believe so. And that's a new condition. I believe he has a new condition. Well, here's his response, because I was asking those questions. He's going to say, yeah, that's fine. But then Kennedy goes on to also say it was only in part. It was part stenosis, part of the accident. Therefore, that's not enough to break the chain of causation. So how do you respond to his citing Kennedy as sort of waffling that it was only part of it? Well, and I think, you know, Kennedy, I mean, he does. He says, you know, that the stenosis was in part produced by the disc herniation. But I think significantly he says prior to 41 days prior to the accident, that herniation wasn't present. So I think we've got, we have. Objective medical evidence has said it's new trauma. That's right. Unrelated to the earlier accident. Yeah, I think we've, you know, because he wants to do the decompression at L2-3. And I think also significantly, you know, he did see Dr. Kennedy six days prior to this accident. Dr. Kennedy was not recommending any treatment at that time. No follow-up visits, no treatment. And he was, you know, he released him, you know. And the importance and I think the significance of the reason that my client was going to see Dr. Kennedy on that date was he was, his job was going to be changing. He was going, he was inquiring about actually lifting freights. And that was the purpose of that visit. And also to review that MRI that was ultimately performed. Like I said, Dr. Kennedy recommended no follow-up treatments, you know, after this visit. So I think that's, that in my mind is significant. And I think that was, you know, subsequent to this accident. You know, I think this accident caused that, you know, herniation. I said it wasn't. It wasn't on the MRI prior to the accident? No, no. So your argument simply is, but for this truck overturn, he would not have been a surgical candidate for further treatment? I believe so. I believe so. Which would lead you to a conclusion that this was a new injury, 100% attributable to a truck overturn? That's our position. Do you have to establish that the May 2011 accident broke the chain of causation in order to prevent? Well, I, like Mr. Magarowski said, I think national freight's on the hook either way. And this has been kind of our argument the entire time. Well, I think the question is as a matter of law. Well, I think as long as it is a causative factor, I think we've got, you know, I think we win on that analysis. As long as it's, you know, as that accident is a causative factor, then, you know, it comes back to I think that we've got a break in the causal chain. Well, and the reason I ask is Vogel, it's not an identical set of circumstances here. You kind of have a flip-flop in terms of the positions where the subject accident occurs in time relative to the another accident. It's reversed here. And so Vogel is being used as a sword here as opposed to a shield in this circumstance. Yeah, and I think that we can distinguish our case in Vogel, I mean, from Vogel because if you look at, I think significance in Vogel is this, in Vogel, the guy's fusion, he was three months post-surgery. His fusion was not, was not healed. I mean, if you look at Dr. Kennedy, whenever he testified, and also in that report from 2011, it showed that the fusions at L3, L4, and L5 were solid and complete. So I think that kind of distinguishes our facts definitely from Vogel because Vogel, he was three months post, and they said in Vogel that he did not have a solid fusion at that time. So I think that helps us distinguish our case from Vogel, the fact that, and we're 16 or 18 months post-surgery. So I think that's, I think that's significant because we've got, like I said, we've got a solid fusion. Any other questions? Thank you, counsel. Counsel, you may reply. Sure. If you look at our brief, page four, your honor, on December 8th, five, six months before, Dr. Narla reported low back pain into both legs, right and left. We took Dr. Kennedy's deposition. He didn't read Dr. Narla's report. In terms of Dr. Kennedy, six days prior, and that's also on page four of our brief, he attributed the stenosis to the prior fusion procedure at the adjacent lower levels. The surgery that he is recommending is not to redo the fusion, but for the stenosis. And, doctor, the case law is clear. You have to completely break the causal connection chain. And, again, but for our first injury in December of 2008, he wouldn't have had that fusion surgery, which Dr. Kennedy contributed to causing the stenosis, which is the surgery that they want to do now. And when you look at page five, and I think this herniated disc is a red herring, he says, in part, well, in part doesn't cut it. As long as they don't completely break the chain, we're still responsible under the first, and the case law is very clear on that. If you have a current work-related condition and you don't break the causal connection under vocal, you're still responsible, even though there's intervening accidents, because that initial injury puts you in a weakened condition, caused you to have that fusion and the stenosis. So this disc herniation, I think, is a red herring. It's clear that he says only in part, okay? And so I don't think, and I believe you gentlemen should find that under vocal, that we're still responsible under the first. We're not opposing any surgery under that first. He should have his surgery. We should be responsible for that under the first, and that's where we should be responsible as we go. Thank you very much. Thank you, counsel, both for your arguments in this matter. As we take them under advisement, a written disposition shall issue.